IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

WILLIAM MCINTOSH,

   PLAINTIFF,

v.            CASE NO.:

PALL CORPORATION,

   DEFENDANT.
_____/

## COMPLAINT

Plaintiff, William McIntosh, (hereinafter referred to as the "Plaintiff" or "McIntosh"), by and through the undersigned counsel, sues the Defendant, Pall Corporation. (hereinafter referred to as the "Defendant" or "Pall"), and alleges as follows:

### INTRODUCTION

1. Plaintiff brings this action for discrimination and retaliation in violation of his federally protected rights under the Americans with Disabilities Act, (ADA), 42 U.S.C. §§ 12111-12117, 12203; Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.,;* and the Civil Rights Act of 1991, 42 U.S.C. § 1981.

### JURISDICTION AND VENUE

2. The jurisdiction of the Court over this controversy is invoked pursuant

to 29 U.S.C. § 2617(a)(2) and 42 U.S.C. §§ 12111-12117, 12203.

3. This action lies in the Northern District of Florida, Pensacola Division, because the action arose in this judicial district.

4. Plaintiff has complied with all conditions precedent and administrative remedies have been exhausted and jurisdiction is invoked pursuant to 28 U.S.C. § 1331 and the Florida Civil Rights Act of 1992, as amended, Chapter 760 et seq., Florida Statutes. On June 23, 2021, Plaintiff filed a Charge of Discrimination with the Florida Commission on Human Relations ("FCHR" No.: 202129998) and the United States Equal Employment Opportunity Commission ("EEOC" No.: 15D-202100657). On December 20, 2021, the FCHR issued a determination pursuant to Fla. Stat. § 760.11(3). Plaintiff thereafter requested his ninety (90) day Notice of Right to Sue letter from the EEOC which was received on March 21, 2022.

## PARTIES

5. Plaintiff a citizen of the State of Florida who resides in Escambia County, Pensacola, Florida.

6. Defendant, Pall Corporation, is a private for-profit business that is licensed to do and does business in the State of Florida, Escambia, County.

## FACTS

7. Plaintiff is a 44 year old African American male.

8. Plaintiff was employed by Defendant from March 2018 until September 2020, as a Production Operator II.

9. During his employment with Defendant, Plaintiff performed the duties and responsibilities of his position in a satisfactory manner.

10. Plaintiff is color blind.

11. Plaintiff was also required to take an eye exam before his employment began with Defendant, which was held at Baptist on Nine Mile Road, and the nurse on site informed Plaintiff that he was color blind.

12. After his company test and him being informed that he was color blind, Plaintiff informed Defendant, including the following individuals, Zack Effret, Jennifer Leonard, and Tammy Mason, that he was informed that he was color blind.

13. The first time Plaintiff informed Zach and Tammy of his color blindness, they began picking random things up and asked Plaintiff, in a rude and condescending manner, to identify the color.

14. Plaintiff said he did not know what the colors were, to which all the Belt Tech's in the room began laughing at him.

15. These individuals and others would then talk about Plaintiff's disability to each other and behind his back.

16. Upon learning of this, Plaintiff made complaints to Defendant which

were never investigated or addressed.

17. On Friday June 28, 2020, Plaintiff was asked to leave the job site when the value stream leader and supervisor overseeing the job, Plaintiff was working on, accused him of lying about being color blind and began harassing him about his disability.

18. Plaintiff called the company HR hotline to report the incident and discriminatory conduct by his valve stream leader (VSL) and supervisor.

19. After having reported the conduct to HR, Plaintiff was told that he was suspended and being investigated for his involvement in dye tests that were being conducted and for allegedly refusing to perform the test.

20. Plaintiff, again, provided HR with medical documentation of his disability, which Defendant already had from the company physical.

21. The test, which Plaintiff was being investigating for, was not solely his responsibility.

22. Plaintiff was not a Belt Tech, he was an Operator II and worked in room 190, which meant it was not his responsibility to check the dye color.

23. The following shift Operator, Jon James, (Caucasian male) did not perform any of the tests including the dye color.

24. On September 3, 2020, Plaintiff was tested again for color blindness by a company doctor who confirmed what Plaintiff had been telling everyone the

truth.

25. Prior to being suspended, Plaintiff was being treated differently because of his race and his supervisors were overly critical of his work performance and he was passed over for promotions compared to that of his Caucasian co-workers.

26. On June 26, 2020, Plaintiff was approached by Ms. Leonard about changing his PTO date so that another co-worker (Caucasian female) could have the day off instead.

27. Ms. Leonard had a form she wanted Plaintiff to sign to change his PTO date and when he refused to voluntarily change his PTO date, she became hostile with Plaintiff about changing his PTO date and went and told VSL Angelo Torre and came back saying he wanted to see Plaintiff.

28. Prior to this, Plaintiff sent an e-mail to Defendant's management complaining about the discriminatory treatment he was receiving in the workplace by these individuals (Caucasian females), that were now reporting him for refusing to voluntary switch his PTO dates with an individual that was the subject of his complaints.

29. Plaintiff went to Mr. Torre's office with Ms. Leonard and the first thing he talks about is change of command, inferring that he was upset about the e-mail.

30. On September 9, 2020, Plaintiff was informed that he was being terminated for gross misconduct for refusal to follow management's instructions and having a threating tone in his voice.

### FIRST CAUSE OF ACTION
*DISABILITY DISCRIMINATION*
*AMERICANS WITH DISABILITIES ACT, (ADA)*

31. Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 4 through 24 and 30 of this complaint with the same force and effect as if set forth herein.

32. The Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.*, prohibits employers from discriminating against qualified individuals because of a disability "in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

33. At all times material hereto, Plaintiff was an employee of Defendant and Defendant was an employer within the meaning of Americans with Disabilities Act, (ADA), as the Defendant employed more than fifteen (15) employees.

34. As such, Defendant is prohibited from discriminating against any qualified individual with a disability.

35. Plaintiff is, and was at all time pertinent hereto, a qualified individual with a disability.

36. Plaintiff suffers from color vision deficiency (sometimes called color blindness) which represents a group of conditions that affect the perception of color.

37. Plaintiff's color vision deficiency is an impairment and disability within the meaning of the ADA as it substantially limits Plaintiff's ability to perform major life activities as compared to most people in the general population.

38. Plaintiff's color vision deficiency substantially limited his ability to perform the major life function of seeing/ vision.

39. Upon learning of Plaintiff's color vision deficiency, Defendant was under an obligation to engage in a good faith interactive process with Plaintiff to determine the reasonableness of his requested accommodation.

40. Defendant failed to engage in a good faith dialogue with Plaintiff in an attempt to "identify the precise limitations" caused by Plaintiff's color vision deficiency nor did Defendant "explore potential accommodations" to overcome those limitations.

41. Defendant's termination and disqualification of Plaintiff's employment on September 9, 2020, on the basis of his disability and Defendant's failure to make a good faith individual assessment to determine whether Plaintiff could be employed or whether a reasonable accommodation would enable him to be employed by Defendant, violated the ADA.

42. Any possible assertion that there was a viable business justification for the treatment of Plaintiff that led to his termination, is entirely *pretextual* for Defendant's retaliation and discrimination against him for engaging in a protective activity and for any actual or perceived disability.

43. The adverse personnel action, the termination of Plaintiff's employment, clearly violated his statutory protected rights and constituted a prohibited employment practice, contrary to the public policy of the under the Americans with Disabilities Act (ADA).

44. As a result of the Defendant's violations of the ADA, Plaintiff has been substantially damaged, in that he has lost wages, associated job benefits; and in addition, he has sustained compensatory damages, based upon mental, psychological and emotional distress, and anxiety from difficult economic circumstances, resulting from his unlawful discharge.

### SECOND CAUSE OF ACTION
*DISABILITY RETALIATION*
*AMERICANS WITH DISABILITIES ACT, (ADA)*

45. Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 4 through 24 and 30 of this complaint with the same force and effect as if set forth herein.

46. The Americans with Disabilities Act, 42 U.S.C. § 12101, et seq., prohibits employers from retaliating against qualified individuals for objecting to

discriminatory acts or for requesting an accommodation.

47. Defendant terminated and disqualified Plaintiff from his employment in retaliation for questioning and objecting to Defendant's questioning and treatment of him regarding his disability.

48. Defendant acknowledged and regarded Plaintiff as disabled (perceived or otherwise) and as having an impairment.

49. When Plaintiff provided Defendant with sufficient information regarding his color vision deficiency and attempted to engage in a good faith interactive discussion about his disability, Plaintiff's actions became and were considered a statutorily protected activity under the ADA.

50. Defendant's September 9, 2020, termination and disqualification of Plaintiff's employment, was in retaliation for him objecting to Defendant's discriminatory practices regarding his disability, a constituted a statutory protected activity and a prohibited employment practice, contrary to the public policy of and in violation of the ADA.

51. Any possible assertion that there was a viable business justification for the treatment of Plaintiff that lead to his termination, is entirely *pretextual* for Defendant's retaliation against him for engaging in the statutory protective activity of requesting a reasonable accommodation.

### THIRD CAUSE OF ACTION
(RACE DISCRIMINATION- FEDERAL CLAIM - 42 U.S.C. § 1981)

52. Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 4 through 9; 18 and 26 through 30 of this complaint with the same force and effect as if set forth herein.

53. Defendant has discriminated against Plaintiff in the terms and conditions of his employment on the basis of his race in violation of 42 U.S.C. § 1981.

54. Plaintiff is an African American male.

55. Plaintiff was more than qualified for the position of Operator II and performed the duties and responsibilities in a more than satisfactory manner.

56. Plaintiff's employment with Defendant was terminated on September 9, 2020.

57. Plaintiff was consistently subjected to racially derogatory treatment and comments and was treated less favorably than his Caucasian co-workers.

58. Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's discriminatory practices unless and until this Court grants relief.

### FOURTH CAUSE OF ACTION
*(RACE RETALIATION/HOSTILE WORK ENVIRONMENT- 42 U.S.C. § 1981)*

59. Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 4 through 9; 18 and 26 through 30 of this complaint with the same

force and effect as if set forth herein.

60. Defendant has retaliated against Plaintiff in the terms and conditions of his employment on the basis of his race in violation of 42 U.S.C. § 1981.

61. Plaintiff is an African American male.

62. Plaintiff was more than qualified for the position of Operator II and performed the duties and responsibilities in a satisfactory manner.

63. Plaintiff was being treated differently because of his race and his supervisors were overly critical of his work performance and he was passed over for promotions compared to that of his Caucasian co-workers.

64. Plaintiff sent an e-mail to Defendant's management complaining about the discriminatory treatment he was receiving in the workplace.

65. Defendant's September 9, 2020, termination and disqualification of Plaintiff's employment was in retaliation for him objecting to Defendant's discriminatory practices regarding his race, a constituted a statutory protected activity and a prohibited employment practice, contrary to the public policy of and in violation of the Section 1981.

66. Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's discriminatory practices unless and until this Court grants relief.

## SIXTH CAUSE OF ACTION
*(Race Discrimination-– Title VII)*

67. Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 4 through 9; 18 and 26 through 30 of this complaint with the same force and effect as if set forth herein.

68. Defendant has discriminated against Plaintiff in the terms and conditions of his employment on the basis of his race in violation of Title VII.

69. Plaintiff is an African American male.

70. Plaintiff was more than qualified for the position of Operator II and performed the duties and responsibilities in a more than satisfactory manner.

71. Plaintiff's employment with Defendant was terminated on September 9, 2020.

72. Plaintiff was consistently subjected to racially derogatory treatment, comments, and was treated less favorably than his Caucasian co-workers.

73. Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's discriminatory practices unless and until this Court grants relief.

## SEVENTH CAUSE OF ACTION
*(RACE RETALIATION/HOSTILE WORK ENVIRONMENT - TITLE VII)*

74. Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 4 through 9; 18 and 26 through 30 of this complaint with the same

force and effect as if set forth herein.

75. Defendant retaliated against Plaintiff engaging in a protected activity in the terms and conditions of his employment on the basis of his race in violation of Title VII.

76. Plaintiff is an African American male.

77. Plaintiff was more than qualified for the position of Operator II and performed the duties and responsibilities in a satisfactory manner.

78. Plaintiff was being treated differently because of his race and his supervisors were overly critical of his work performance and he was passed over for promotions compared to that of his Caucasian co-workers.

79. Plaintiff sent an e-mail to Defendant's management complaining about the discriminatory treatment he was receiving in the workplace.

80. Defendant's September 9, 2020 termination and disqualification of Plaintiff's employment was in retaliation for him objecting to Defendant's discriminatory practices regarding his race, a constituted a statutory protected activity and a prohibited employment practice, contrary to the public policy of and in violation of the Title VII.

81. Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's discriminatory practices unless and until this Court grants relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests this Court to enter a judgment:

a)   Declaring the acts and practices complained of herein are violation of the Title VII, 1981 and ADA;

b)   Enjoining and permanently restraining those violations of the Title VII, 1981 and ADA;

c)   Directing the Defendant to take such affirmative action as is necessary to ensure that the effects of these unlawful employment practice are eliminated and do not continue to affect Plaintiff's employment opportunities;

d)   Equitable relief in the form of reinstatement or front pay, as the court deems appropriate, pursuant to the Title VII, 1981 and ADA;

e)   Directing Defendant to place Plaintiff in the position he would have occupied but for Defendant's discriminatory treatment of him and make him whole for all earnings he would have received but for Defendant's discriminatory treatment, statutory damages for lost wages, benefits, and other compensation, plus interest thereon at the statutory rate, pursuant to the Title VII, 1981 and ADA;

f)   Awarding compensatory damages in the amount of the above-

requested award, pursuant to the Title VII, 1981 and ADA;

g) Plaintiff further seeks declaratory, injunctive, and equitable relief pursuant to the Title VII, 1981 and ADA;

h) Awarding Plaintiff attorney's fees, expert witness fees, and costs of this action, pursuant to the Title VII, 1981 and ADA and Fed. R. Civ. P. 54 and such other relief as this Court may deem just and proper;

i) Granting such other and further relief, equitable or otherwise, as the Court deems just and proper in the premises.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury in this action.

Dated: May 9, 2022.    By: */s/ Clayton M. Connors*
CLAYTON M. CONNORS
Florida Bar No.: 0095553
Email: cmc@westconlaw.com
**THE LAW OFFICES OF**
**CLAYTON M. CONNORS, PLLC.**
4400 Bayou Blvd., Suite 32A
Pensacola, Florida 32503
Tel: (850) 473-0401
Fax: (850) 473-1388
*Attorney for Plaintiff*